IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| STEVEN RASMUSSEN,<br><br>         Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>GENERAL GROWTH PROPERTIES, INC., and PROVO MALL, LLC,<br><br>         Defendants/Counterclaim Plaintiffs. | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:04-CV-00099 PGC |

This case is about who has rights to the Internet domain name provotownecentre.com: plaintiff Steven Rasmussen, a pro se litigant who registered this domain name in July 1997, a few days before the Provo Towne Centre mall opened in Provo, Utah, or defendants, the owners of that mall?  The World Intellectual Property Organization has already determined that Mr. Rasmussen registered the domain name in bad faith and ordered him to turn them over to defendants.  Mr. Rasmussen filed this suit as an apparent appeal of the WIPO's decision.

Defendants have filed for summary judgment on Counts III through VI of their counterclaim, which allege Lanham Act violations, service mark infringement in violation of Utah Code Ann. § 70-3a-101, deceptive trade practices, and unfair competition.  After carefully

considering all the parties' briefs, the court finds no disputed issues of material fact exist as to the key elements of defendants' claims. The court therefore GRANTS defendants' motion.

> I. **Undisputed Facts**

In 1996, J.P. Realty — defendants' predecessor in interest and developer of the Provo Towne Centre mall — registered the business name Provo Towne Centre with the State of Utah in anticipation of developing a mall in Provo, Utah. On December 3, 1996, J.P. Realty entered into a memorandum of understanding with Provo City to develop a shopping mall to be called "Provo Towne Centre." Six months later, the public groundbreaking for the Provo Towne Centre mall occurred.

Between the groundbreaking on June 5, 1997, and the mall's opening in October 1998, J.P. Realty spent hundreds of thousands of dollars promoting its new mall. Advertising efforts continue to this day. The mall — one of Utah's largest — has been a significant commercial success; revenues in all stores since the mall's opening total hundreds of millions of dollars.

In June of 1997, amidst media coverage of the pending groundbreaking ceremony, Mr. Rasmussen registered the domain name provotownecentre.com. He said he wanted to make an online or Internet shopping mall. He also registered provotownecentre.net and provotownecentre.biz. For whatever reason, however, Mr. Rasmussen's attempt to build a burgeoning online mall around this domain name have been less than successful. Defendants, in contrast, have established a successful Internet presence in connection with their mall. Because provotownecentre.com was unavailable due to Mr. Rasmussen's actions, defendants registered

and developed shopprovotownecentre.com. Since August 2001, this site has received more than 297,000 page views.

After defendants purchased the Provo Towne Centre mall from J.P. Realty, they sent letters to Mr. Rasmussen asking him to relinquish his domain name. Negotiations failed, and defendants initiated an arbitration before the WIPO. The WIPO arbitrator found that Mr. Rasmussen had registered the domain names in bad faith and ordered him to transfer provotownecentre.com, provotownecentre.net, and provotownecentre.biz to defendants.

## II.     Summary Judgment Standards

The court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1]  If the moving party bears its burden to show the absence of a genuine issue of material fact, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial."[2]  The nonmovant may not rely upon allegations or denials in its pleadings.[3]  And "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient' to defeat a properly supported motion for summary judgment."[4]  Thus, to preclude summary

---

[1] Fed. R. Civ. P. 56(c).

[2] *Sally Beauty Co. v. BeautyCo, Inc.*, 304 F.3d 964, 971–72 (10th Cir. 2002).

[3] *See id.*

[4] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

judgment, "the nonmovant must present facts upon which a reasonable jury could find in favor of the nonmovant."[5]

Because Mr. Rasmussen is a pro se litigant, the court has liberally construed his pleadings when deciding whether to grant summary judgment.[6] His pro se status, however, "does not excuse [his] obligation . . . to comply with the fundamental requirements of the Federal Rules of Civil . . . Procedure."[7] Thus, to survive summary judgment, he must demonstrate that a disputed issue of *material* fact exists from which a reasonable jury could find in his favor.

### III.   Defendants' Lanham Act Claim

Defendants claim that Mr. Rasumussen violated 15 U.S.C. § 1125(a) — also known as § 43(a) of the Lanham Act — by registering the domain name provotownecentre.com. Section 43(a) "protects against service mark infringement, even if the mark has not been federally registered."[8] It prevents people from using

> in commerce any word, term, name, symbol or device . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods or services, or commercial activities by another person.[9]

---

[5]*Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1068 (10th Cir. 2005)

[6]*Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

[7]*Id.*

[8]*Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004) (internal quotation marks omitted).

[9]15 U.S.C. § 1125(a)(1)(A).

The Tenth Circuit has recently given specific "guidance . . . that the relevant confusion under trademark law is not limited to confusion of consumers as to the source of the goods, but also includes confusion as to sponsorship or affiliation,"[10] such as a website's affiliation with a separate organization or undertaking.

"To prevail in an action for unfair competition under § 43(a), 'a plaintiff must establish that (1) her mark is protectable, and (2) the defendant's use of [an identical or similar] mark is likely to cause confusion among consumers.'"[11] The court will address these two inquiries separately.

    A.    <u>Defendants' Mark Is Protectable.</u>

Defendants argue that "Provo Towne Center" qualifies as a protectable service mark under 15 U.S.C. § 1127. The court agrees.

The Lanham Act defines a service mark as "any word, name, symbol, or device, or any combination thereof used by a person . . . to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services."[12] Whether a mark is eligible for protection, and the level of protection it receives, depends on whether its terms are "generic, descriptive, suggestive, arbitrary, [or] fanciful."[13] Suggestive, arbitrary, and fanciful terms are "inherently distinctive, and thus receive the greatest

---

[10] *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 835 (10th Cir. 2005).

[11] *Donchez*, 392 F.3d at 1215 (quoting *Packman v. Chi. Trib. Co.*, 267 F.3d 628, 638 (7th Cir. 2001)).

[12] 15 U.S.C. § 1127.

[13] *Donchez*, 392 F.3d at 1216 (internal quotation marks omitted).

protection against infringement."[14]  Descriptive terms are protectable only upon a showing of secondary meaning.[15]  Generic terms are "ineligible for protection because the public has an inherent right to call a product or service by its generic name."[16]

The court agrees with defendants that "Provo Towne Centre" is a descriptive mark because it consists of the geographic term "Provo" and the descriptive or generic words "Towne" and "Centre."  As such, "Provo Towne Center" is protectable only if it has acquired secondary meaning, which "exists only if most consumers have come to think of the word not as descriptive at all but as the name of a product [or service]."[17]  A party may establish that its service mark has acquired secondary meaning by

> presenting circumstantial evidence regarding: (1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture.[18]

In this case, the first seven pages of defendants' sealed memorandum in support of their summary judgment motion contains an exhaustive, unrebutted list of facts that conclusively establish the three factors discussed above.  As such, the court holds that defendants have established secondary meaning in their service mark "Provo Towne Centre."

---

[14] *Id.* (internal quotation marks omitted).

[15] *See id.*

[16] *Id.* (internal quotation marks omitted).

[17] *Id.* at 1218 (alteration in original) (internal quotation marks omitted).

[18] *Id.* (citation omitted).

Mr. Rasmussen argues that the service mark is not descriptive but rather is fanciful or arbitrary. This is simply incorrect. A fanciful mark "is not a real word at all, but is invented for its use as a mark."[19] This is not the case here; none of the three words in the mark are new inventions. And an "arbitrary mark applies a common word in an unfamiliar way,"[20] such as using "Seven-Up" to designate a type of soft drink. The court finds that there is no evidence from which a reasonable jury could conclude that "Provo Towne Centre" or provotownecentre.com are unfamiliar applications of these common words. Therefore, the mark is not fanciful or arbitrary.

In sum, the undisputed evidence shows that defendants' service mark, "Provo Towne Centre," is protectable. It is descriptive and has acquired secondary meaning. Defendants have thus proven the first of the two elements for Lanham Act liability.

>B. Rasmussen's Use of "Provo Towne Centre" in His Domain Name "provotownecentre.com" Is Likely to Cause Confusion.

"Likelihood of confusion forms the gravamen" of Lanham Act claims.[21] This second element of a Lanham Act claim is frequently a fact question for the jury, but it is "amenable to summary judgment in appropriate cases."[22] Courts must evaluate these factors when determining whether a mark is likely to cause confusion with another:

---

[19]*Id.* at 1216 (citation omitted).

[20]*Id.* (citation omitted).

[21]*King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999).

[22]*Id.* (internal quotation marks omitted).

(a) the degree of similarity between the marks; (b) the intent of the alleged infringer in adopting its mark; (c) evidence of actual confusion; (d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties; (e) the degree of care likely to be exercised by purchasers; and (f) the strength or weakness of the marks.[23]

Based on these six factors, the court finds that this is an appropriate case for summary judgment. The two marks are virtually identical; the only difference between defendants' mark and Mr. Rasmussen's domain name is the addition of ".com" on the end. The WIPO found that Mr. Rasmussen registered provotownecentre.com in bad faith, and nothing in the briefs demonstrates otherwise.

The third factor is neutral in the court's analysis, for there is no evidence of actual confusion. But the fourth factor — the relation in the use and manner of marketing the services — weights heavily in defendfants' favor. Defendants' mark is the name of a prominent shopping mall in Provo, Utah; Mr. Rasmussen has said he registered his website to establish an online or Internet shopping mall.[24] This is problematic because defendants' mall also has an Internet presence — as discussed above, shopprovotownecentre.com has drawn hundreds of thousands of visits.

Finally, the fifth and six factors weigh in defendants' favor. Mr. Rasumussen admitted in his deposition that the affected consumers generally are not sophisticated. And the record evidence overwhelmingly demonstrates the strength of defendants' mark and the weakness of Mr. Rasmussen's domain name as a stand-alone business.

---

[23] *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 833 (10th Cir. 2005).

[24] *See* Dep. Steven Rasmussen 54:20-55:3; 64:10-15.

Given these undisputed facts, the court finds that any reasonable jury would determine Mr. Rasmussen's use of "Provo Towne Centre" in his domain name "provotownecentre.com" is likely to cause confusion. The defendants have therefore established the second element of the Lanham Act's test for unfair competition. Since defendants have established both elements, they are entitled to summary judgment against Mr. Rasmussen on their Lanham Act claim.

### IV.    Defendants' Claims for Service Mark Infringement, Deceptive Trade Practices, and Unfair Competition Under Utah Law

Defendants state that if Mr. Rasmussen is liable for unfair competition under § 43(a) of the Lanham Act, he is also liable for service mark infringement, deceptive trade practices, and unfair competition under Utah law because the test for liability on those three causes of action is identical to the Lanham Act test. In support of this proposition, defendants cite *Amoco Oil Co. v. Rainbow Snow*,[25] a Tenth Circuit case from 1984. But this is a slight misrepresentation of *Amoco Oil*. In that case, the Tenth Circuit stated that the parties and the lower court "apparently agreed that, regardless which is the proper definition [of likelihood of confusion], it is the same under both Utah and federal law."[26] The parties, however, failed to "raise this as an issue on appeal"; therefore, the Tenth Circuit "assume[d], *but d[id] not decide*, that the tests are the same under Utah and federal law."[27]

Defendants have not cited any cases that hold that the tests for service mark infringement, deceptive trade practices, and unfair competition under Utah law are identical to the Lanham Act

---

[25] 748 F.2d 556 (10th Cir. 1984).

[26] *Id.* at 558 n.4.

[27] *Id.* (emphasis added).

test. Mr. Rasmussen, however, has not identified any alternate tests. Thus, just as *Amoco Oil* did, this court will assume the tests are identical and, for the reasons described in Section III above, hereby GRANTS summary judgment against Mr. Rasmussen on these causes of action.

### V.  Mr. Rasmussen's Affirmative Defenses

Finally, Mr. Rasmussen raises two affirmative defenses to defendants' claims: laches and unclean hands. Neither is sufficient to preclude summary judgment.

"In order to prove the affirmative defense of laches, the defendant must demonstrate that there has been an unreasonable delay in asserting the claim and that the defendant was materially prejudiced by that delay."[28] The undisputed evidence here demonstrates that these defendants asserted their claims against Mr. Rasmussen in a reasonably expeditious manner. But even assuming there was a delay, there is no evidence that Mr. Rasmussen was prejudiced by it. This defense therefore fails. Likewise, there is no record evidence that would allow a reasonable jury to determine that defendants have acted with unclean hands in prosecuting this action. Mr. Rasmussen's two alleged affirmative defenses thus fail to shield him from liability.

### VI.  Remedies

The court hereby ORDERS that defendants' summary judgment motion (# 68) is GRANTED. Defendants are entitled to summary judgment on Counts III through VI of their Counterclaim. Judgment on counts IV through VI, however, is premised on the assumption that

---

[28]*Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 949 (10th Cir. 2002) (internal quotation marks omitted).

the tests for service mark infringement, deceptive trade practices, and unfair competition under Utah law are identical to the test for liability under § 43(a) of the Lanham Act.

Since defendants are entitled to summary judgment, they also are entitled to the domain names that form the basis of this lawsuit. The court therefore ORDERS Mr. Rasmussen to transfer and convey the domain names provotownecentre.com, provotownecentre.net, and provotownecentre.biz, including all his interest or control therein, to defendant General Growth Properties, Inc. within five days of this order. This remedy is warranted based on the Lanham Act violation alone, irrespective of the Utah causes of action.

Given these findings and orders, Mr. Rasmussen's claims against defendants are baseless. The court therefore enters summary judgment in favor of defendants on Mr. Rasmussen's claims.

Defendants also seek a permanent injunction to prevent Mr. Rasmussen from owning or using any trade name, trademark, service mark, or Internet domain name that is comprised in whole or in part of the terms "Provo Towne Centre" or any confusingly similar terms. The court declines to enter such an injunction. "Regardless of whether the unfair conduct has stopped and is not likely to recur, the trial court still has the discretion to grant or deny an injunction against such conduct."[29] That discretion centers around the court's judgment as to whether the infringing conduct has ceased and how likely it is to resume or recur.[30] In this case, the court finds that injunctive relief is not appropriate because the court has ordered Mr. Rasmussen to promptly transfer control and ownership of the infringing domain names to the defendants. He will

---

[29]*Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 525 (10th Cir. 1987).

[30]*See id.* (citing *Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 207 (7th Cir. 1982)).

therefore no longer have the ability to infringe their marks with those names.  And since this lawsuit has taught Mr. Rasmussen that the defendants are willing to spend time, energy, and money protecting their intellectual property rights — and that the courts will act on proper claims — the court finds it is unlikely that he will incorporate the words "Provo Towne Centre" into his future business ventures, online or otherwise.

Finally, defendants seek an award of attorney's fees.  Under 15 U.S.C. § 1117(a), the court may award attorney's fees to the prevailing party "in exceptional cases."  The court finds that this is an exceptional case and that attorney's fees are warranted.  The WIPO found that Mr. Rasmussen registered the domain names in bad faith.  The court agrees, as the evidence here fully supports that conclusion.

While attorney's fees are warranted, the court is mindful that Mr. Rasmussen is a pro se litigant and of admittedly limited resources.  The court therefore limits the amount of attorney's fees defendants may recover to $1,000.00.  Defendants' attorneys shall submit an affidavit to the court within fifteen (15) days as evidence that they have provided at least $1,000.00 worth of legal services to their clients.  They are to send a copy via priority mail to Mr. Rasmussen in Alaska.  He shall then have twenty (20) days to dispute that evidence.

In view of these rulings, it is no longer necessary to hold the final pre-trial conference or the trial. Those hearings are therefore cancelled. The resolution of this summary judgment motion also moots defendants' motion for sanctions; thus, the court DENIES that motion as MOOT (# 95). The Clerk's Office is directed to close the case.

SO ORDERED.

DATED this 7th day of December, 2005.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge